UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 31, 2014
```

VOICEONE COMMUNICATIONS, LLC, a
limited liability company; and WABEC, LLC, a
limited liability company,

                          Plaintiffs,

            v.

GOOGLE INC., a corporation; and DOES 1
through 100 inclusive,

                          Defendants.

**ORDER**

12 Civ. 9433 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

           Plaintiff Wabec, LLC ("Plaintiff" or "Wabec") brings this action against Google

Inc. for copyright infringement, misappropriation of trade secrets, breach of contract, and unjust

enrichment.[1]   Plaintiff's claims stem from a contractual relationship between VoiceOne

Communications, LLC ("VoiceOne") and Google in 2006 relating to a technology known as

"Click to Call."

           Google has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing, inter

alia, that this action is barred by the two-dismissal rule embodied in Fed. R. Civ. 41(a) and N.Y.

C.P.L.R. 3217; that all of Plaintiff's six-year-old claims are barred by the applicable statute of

limitations; that VoiceOne's breach of contract fails, because that entity no longer exists and

---

[1]  As discussed below, although the caption names VoiceOne Communications, LLC, as a
plaintiff, Plaintiff's counsel has submitted a declaration stating that this action was filed solely
on behalf of Wabec, and that the reference to another plaintiff was "by mistake."  (Ball Decl.
(Dkt. No. 36) at ¶¶ 11-12).

because its contract with Google was not assignable; and that the unjust enrichment claim is pre-empted by the Copyright Act.[2]

Google has also moved for sanctions pursuant to Fed. R. Civ. P. 11.

For the reasons stated below, Defendant's motion to dismiss will be granted, and Defendant's motion for sanctions will likewise be granted.

## FACTUAL BACKGROUND

VoiceOne and its parent company, VoIP, Inc., ("VoIP"), developed a technology known as "Click to Call," which enables Internet users to make a telephone call by clicking a link on a website. (Cmplt. (Dkt. No. 1) ¶¶ 4, 13)  On September 1, 2005, VoiceOne and Google entered into a Master Services Agreement ("MSA") regarding the Click to Call technology.  (Id. ¶ 15)  The MSA provides that information exchanged between the parties will be maintained as confidential.[3]  On November 28, 2006, the parties amended the MSA to permit Google to identify VoiceOne as the designated carrier of phone calls initiated on Google websites.  (Id. ¶ 18)

---

[2]  Plaintiff has not addressed in any fashion Google's arguments concerning its breach of contract and unjust enrichment claims.  (See Opp. Br. (Dkt. No. 35))  Accordingly, these claims have been abandoned and will be dismissed.  See In re Adelphia Commc'ns Corp. Sec. & Derivative Litig., No. 03 MDL 1529 (JMF), 2013 WL 6838899, at *13 (S.D.N.Y. Dec. 27, 2013) ("Plaintiffs did not respond to Deloitte's arguments with respect to their indemnity claim in their memorandum of law in opposition to the motion to dismiss.  Thus, the indemnity claim is deemed abandoned and dismissed on that basis."); Brandon v. City of New York, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (same); Bonilla v. Smithfield Assocs. LLC, No. 09 Civ. 1549 (DC), 2009 WL 4457304, at *4 (S.D.N.Y. Dec. 4, 2009) (same).

[3]  Section 7.8 of the MSA states in part:  "[f]or a period of 2 years, except as may be required by legal or regulatory obligations from the date of the disclosure thereof, each Party shall maintain the confidentiality of all information or data of any nature . . . provided to it by the other Party hereto."  (Page Decl. (Dkt. No. 32), Ex. M)

Section 7.9 of the MSA states:  "[a]ny information or documentation disclosed between [the] parties during the performance[] of this Agreement shall be subject to the terms and conditions as set forth in Section 7.8 or if information is labeled as confidential or proprietary."  (Id.)

Pursuant to the MSA, VoiceOne provided Google with the Click to Call technology (id. ¶ 15), including source codes, algorithms, training, and advice to help Google generate revenue by using Click to Call technology in its products. (Id. ¶ 19)  In turn, Google incorporated Click to Call features in its products, including a link on Google Maps that enabled users to initiate a telephone call directly from the website. (Id. ¶ 20)

Plaintiff alleges that, on August 28, 2006, Google and eBay announced a multi-year agreement and plan to "integrate and launch 'click-to-call' advertising functionality" that would enable users to initiate a "'call to participating eBay merchants or Google advertisers directly from either company's respective sites, using Skype or Google Talk.'" (Id. ¶ 21) Plaintiff further alleges that, in January 2007, Google provided notice to VoiceOne that it was terminating the MSA based on an unauthorized disclosure identifying Google as a VoiceOne customer. (Id. ¶ 22)  According to Plaintiff, Google's termination was pretextual; its true motive was to exploit confidential information it received from VoiceOne. (Id.)  Plaintiff further alleges that, shortly after it terminated the MSA, Google "misappropriated, exploited, disclosed and otherwise used" the confidential information it received from VoiceOne in connection with a joint venture with eBay and Skype. (Id. ¶ 23)

In October 2008, Wabec acquired all of VoIP and VoiceOne's assets.  Wabec is the successor and assignee of both entities. (Id. ¶ 5)

On June 2, 2009, an involuntary petition under Chapter 7 of the Bankruptcy Code was filed against VoIP in United States Bankruptcy Court for the Southern District of Florida. (Page Decl. (Dkt. No. 32), Ex. B)

## PROCEDURAL HISTORY

On July 29, 2009, VoIP, VoiceOne, and Wabec filed an action against Google in California state court asserting state law causes of action for misappropriation of trade secrets,

3

unfair competition, unjust enrichment, and breach of contract. (Id., Ex. A) These claims were based on the MSA. (Id.) On October 5, 2009, Google demurred to the complaint, arguing that (1) a mandatory venue selection provision in the MSA required that any claims regarding that contract be brought in New York; and (2) given the bankruptcy petition against VoIP, only the bankruptcy trustee could bring claims on its behalf. (Id., Ex. D) VoIP, VoiceOne, and Wabec then filed an amended complaint on October 28, 2009 (Id., Ex. E) The Amended Complaint did not address the issues raised by Google, and Google again demurred on November 19, 2009. (Id., Ex. F) On December 30, 2009, VoIP, VoiceOne, and Wabec voluntarily dismissed the action. (Id., Ex. G)

On February 14, 2011, VoIP, VoiceOne, and Wabec brought a second action against Google in Supreme Court of the State of New York, New York County. (Id., Ex. H) The new complaint was based on the MSA and asserted the same four state law causes of action, but added a claim for breach of the covenant of good faith and fair dealing. (Id.) On March 4, 2011, an amended complaint was filed containing substantially identical allegations, but removing VoIP and VoiceOne from the caption, leaving Wabec as the only remaining plaintiff. (Id., Ex. I) On March 11, 2011, VoIP, VoiceOne, and Wabec filed a notice of voluntary discontinuance under N.Y. C.P.L.R. 3217, withdrawing their complaint without prejudice. (Id., Ex. J)

On December 26, 2012, the United States Bankruptcy Court for the Southern District of Florida issued an order approving a settlement in the VoIP Chapter 7 proceeding and dismissing that action. (Id., Ex. C)

On December 28, 2012, Plaintiff filed the instant action, asserting claims for copyright infringement, misappropriation of trade secrets, breach of contract, and unjust enrichment. (Cmplt. (Dkt. No. 1))

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). These factual allegations must be "'sufficient to raise a right to relief above the speculative level.'" Rahman v. Fisher, 607 F. Supp. 2d 580, 584 (S.D.N.Y. 2009) (quoting ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007)).   "In considering a motion to dismiss . . . , the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pleaded "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

"When determining the sufficiency of plaintiff['s] claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiff['s] . . . complaint, . . . to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit." Brass v. Am. Film Tech., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

## I.   NEW YORK'S TWO DISMISSAL RULE

Defendant argues that Fed. R. Civ. P. 41(a) and N.Y. C.P.L.R. 3217 bar this action because Plaintiff previously brought and dismissed two actions based on the same underlying events.  (Def. MTD Br. (Dkt. No. 31) at 1, 5-7)  More specifically, Defendant argues that Plaintiff's voluntary discontinuance of the second action in New York state court carries res judicata effect as to this action, since New York has adopted the so-called "two dismissal" rule through N.Y. C.P.L.R. 3217.  (Id. at 6-7)

Plaintiff argues that the "two-dismissal rule" applies only where both state court actions took place in jurisdictions that have adopted the "two dismissal" rule.  (Opp. Br. (Dkt. No. 35) at 2)  Plaintiff goes on to argue that the "two-dismissal" rule does not apply here because its first action was brought in California, and that state has not adopted such a rule.  (Id.) Plaintiff also argues that the voluntary discontinuance of the second action was "curative" because it came at the insistence of the bankruptcy trustee, who asserted that the New York action violated the automatic stay.  (Id. at 3)

### A.   Applicable Law

Fed. R. Civ. P. 41(a) provides:

(a) Voluntary Dismissal.

   (1) By the Plaintiff.

      (A)   Without a Court Order.  Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:

         (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or

         (ii) a stipulation of dismissal signed by all parties who have appeared.

6

    (B)   Effect.  Unless the notice or stipulation states otherwise, the dismissal is without prejudice.  But if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.

The Federal Rules of Civil Procedure apply, of course, only to civil actions brought in federal court; they do not govern practice and procedure in state courts.  See Fed. R. Civ. P. 1 ("These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81."); Rader v. Baltimore & O.R. Co., 108 F.2d 980, 986 (7th Cir. 1940) ("It is obvious that the rules can only have application to proceedings in the Courts of the United States. . . ."); Bradt v. Smith, 634 F.2d 796, 799 (5th Cir. 1981) ("[The Federal Rules of Civil Procedure] do not, however, govern practice and procedure before the courts of the several states.").

Here, both prior dismissals took place in state court.  Accordingly, as discussed below, to determine the preclusive effect, if any, of these prior dismissals, this Court must look to New York law.  See Rader, 108 F.2d at 986 ("[T]he construction sought by defendant would mean the application of the rule to a dismissal in a State Court.  It is obvious that the rules can only have application to proceedings in the Courts of the United States, and cannot be applied to the practice or procedure in State Courts, nor affect the rights of parties in such Courts.  The clause 'or of any state an action based on or including the same claim' . . . can only mean that a dismissal in a State Court may be utilized as a foundation for the application of the rule in the United States District Court when a subsequent dismissal is there had."); Stewart v. Stearman, 743 F. Supp. 793, 794 (D. Utah 1990) ("It is clear from the text of Rule 41 that the Rule is concerned with the circumstances under which a dismissal without prejudice in a federal court

constitutes 'adjudication upon the merits. . . .'  The rule says nothing about the effect of two

dismissals in state court."); C. Wright et al., 9 Fed. Prac. & Proc. Civ. § 2368 (3d ed. 2013)

("The 'two dismissal' rule applies in federal court actions whether the first dismissal was in a

state or a federal court.  It does not apply, however, if the second dismissal was in a state

court.").

    "When the second dismissal occurs in state court . . . , the two dismissal rule

applies . . . if the state has enacted its own version of the two dismissal rule and would therefore

treat the second dismissal as a dismissal with prejudice." Manning v. S.C. Dep't of Highway &

Pub. Transp., 914 F.2d 44, 47 n.5 (4th Cir. 1990) see also Wright, supra § 2368 ("[Fed. R. Civ.

P. 41(a)] does not apply . . . if the second dismissal was in a state court. . . .  However if the state

has a rule comparable to Rule 41(a)(1), the dismissal in state court would be an adjudication on

the merits in the state court by virtue of the state rule and would bar, as would any adjudication

on the merits, a new suit in a federal court.").  Accordingly, in determining the preclusive effect

of a second state-court dismissal, courts must consult the law of the state in which the second

dismissal occurred.  See, e.g., Cumptan v. Allstate Ins. Co., Civil Action No. 5:10CV12, 2011

WL 3501783, at *2 (N.D. W. Va. Aug. 10, 2011) ("Because the two previous dismissals

occurred in West Virginia state court, this Court must first look to West Virginia's two-dismissal

rule."); Ward v. Wyandot Cnty Bd. of Comm'rs, No. 3:04CV07552, 2005 WL 81903, at *2

(N.D. Ohio Jan. 7, 2005) ("The second dismissal in state court acted as an adjudication on the

merits under [Ohio R. Civ. P.] 41(a)(1) . . . ."); Burton v. Foch Invs., Inc., No. 207-CV-00080-

BER-LRL, 2007 WL 2914772, at *3 (D. Nev. Oct. 3, 2007) ("The only circumstance in which

the two dismissal rule would force the conclusion that the California dismissal constituted a

dismissal on the merits would be if California has incorporated the two dismissal rule into its own code of civil procedure.").

In conducting this inquiry, the Court is "obligated to apply New York law as determined by its highest court." Hamilton v. Beretta U.S.A. Corp., 264 F.3d 21, 29 (2d Cir. 2001). "Where the high court has not spoken, the best indicators of how it would decide are often the decisions of lower state courts." In re Brooklyn Navy Yard Asbestos Litig., 971 F.2d 831, 850 (2d Cir. 1992) (citing Comm'r v. Estate of Bosch, 387 U.S. 456, 465 (1967)). In this regard, the Second Circuit has instructed that "the decision of an intermediate state court on a question of state law is binding . . . unless [the court] find[s] persuasive evidence that the highest state court would reach a different conclusion." Entron, Inc. v. Affiliated FM Ins. Co., 749 F.2d 127, 132 (2d Cir. 1984) (citing St. Clair v. E. Air Lines, Inc., 302 F.2d 477, 481 (2d Cir. 1962)); see Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C., 370 F.3d 259, 263 n.5 (2d Cir. 2004) ("We are bound, as was the district court, to apply the law as interpreted by New York's intermediate appellate courts . . . unless we find persuasive evidence that the New York Court of Appeals, which has not ruled on this issue, would reach a different conclusion."); Deeper Life Christian Fellowship, Inc. v. Sobol, 948 F.2d 79, 84 (2d Cir. 1991) ("[W]here an appellate court of New York has construed the statute in question, its construction is binding on this court in the absence of 'other persuasive data that the highest court of the state would decide otherwise.'") (quoting West v. Am. Tel. & Tel. Co., 311 U.S. 223, 237 (1940)).

N.Y. C.P.L.R. 3217 governs the effect of a voluntary discontinuance in New York state courts. N.Y. C.P.L.R. 3217(a) provides that "[a]ny party asserting a claim may discontinue it without an order . . . by serving upon all parties to the action a notice of discontinuance at any time before a responsive pleading is served or, if no responsive pleading is required, within

twenty days after service of the pleading asserting the claim and filing the notice with proof of service with the clerk of the court . . ." N.Y. C.P.L.R. 3217(c) further provides that

> [u]nless otherwise stated in the notice[] . . . of discontinuance, the discontinuance is without prejudice, except that a discontinuance by means of notice operates as an adjudication on the merits if the party has once before discontinued by any method an action based on or including the same cause of action in a court of any state or the United States.

N.Y. C.P.L.R. 3217(c).  Under New York law, a subsequent action is based on the "same cause of action" if it is "based on the same congeries of facts," even if it relies on "different legal theories of recovery" or seeks "different legal relief." Reilly v. Reid, 45 N.Y.2d 24, 29 (N.Y. 1978).

Notwithstanding the provisions of N.Y. C.P.L.R. 3217(c), New York courts have found an exception where the voluntary discontinuance was not intended to harass. See Tortorello v. Carlin, 162 A.D.2d 291, 292 (1st Dep't 1990).  The First Department has observed that "[t]he purpose of CPLR 3217(c) 'is to curb the use of the discontinuance device as a means of harassment and a source of unnecessary repetitive litigation.'" Id. at 292 (quoting Headley v. Noto, 256 N.Y.S.2d 750, 751 (N.Y. Sup. Ct. Kings Cnty. 1965), aff'd, 24 A.D.2d 493 (2d Dep't 1965)); see 19 N.Y. Judicial Council Rep. 207 (1953) ("[S]ince, as above stated, any second discontinuance by means of notice acts as a complete bar to a subsequent action, the use of the device as a means of unjust harassment is eliminated."). Thus, "'[w]hen it is clear that the plaintiff has no harassment in mind, but only a most legitimate purpose to effect, in discontinuing the second action by notice, the 'on the merits' label will be held not to attach.'" Tortorello, 162 A.D.2d at 292 (quoting David D. Siegel, Practice Commentaries, McKinney's Cons. Laws of N.Y., Book 7B, C.P.L.R. C3217:15); see David D. Siegel, New York Practice § 298 (5th ed. 2011) ("Giving res judicata effect to a discontinuance-by-notice of a second action

is designed to avoid harassment of the defendant. It has therefore been held that when the purpose of the second discontinuance, albeit by notice, involves no harassment, the res judicata rule will not operate and another action will be allowed.").

Following this logic, New York courts have not given res judicata effect to a second voluntary discontinuance where plaintiff agreed to discontinue the action to pursue settlement negotiations, see Tortorello, 162 A.D.2d at 291 (noting that "defendants sought the discontinuance to pursue further settlement negotiations" and that the lower court determined "the second discontinuance was not for harassment but was for the legitimate purpose to conserve limited finances and to resolve the fee dispute"); where the plaintiff discontinued the action due to "various procedural and pleading defects unrelated to the merits," Decarvalhosa v. Adler, No. #01-274, 2001 WL 1744163, at *1 (N.Y. App. Term. 1st Dep't Nov. 27, 2001) (per curiam); and where the plaintiff discontinued the action to correct jurisdictional defects. See Headley, 256 N.Y.S.2d at 751-52 ("[P]laintiffs' notice to discontinue was not to harass but to accede to defendant without putting any burden upon defendant to establish the claim of nonjurisdiction and without the intent thereby to foreclose themselves from any right to proceed with a new action."); ATM One, LLC v. Escobar, 747 N.Y.S.2d 286, 289 (N.Y. Civ. Ct. Nassau Cnty. 2002) ("[H]ere both 'voluntary discontinuances' . . . were for the purpose of correcting jurisdictional defects – one resulting from the inadvertent acceptance of rent by the petitioner . . . , and one from an error made by petitioner's process server – and clearly not for purposes of harassment.").

**B.**      **Analysis**

Here, Plaintiff's two voluntary dismissals fall squarely within C.P.L.R. 3217(c). Plaintiff filed a notice of discontinuance after having "once before discontinued by any method an action based on or including the same cause of action" in another state. N.Y. C.P.L.R.

3217(c).  Moreover, both lawsuits were "based on or including the same cause of action"

because they were "based on the same congeries of facts," Reilly, 45 N.Y.2d at 29, or otherwise

arose "out of the same transaction."  Parker v. Blauvelt Volunteer Fire Co., Inc., 93 N.Y.2d 343,

347 (N.Y. 1999) (quoting O'Brien v. City of Syracuse, 54 N.Y.2d 353, 357 (N.Y. 1981)).[4]

  As discussed above, the First Department has recognized an exception to the two-

dismissal rule of N.Y. C.P.L.R. 3217(c) where the second discontinuance was not for purposes of

harassment.  See Tortorello, 162 A.D.2d at 291-92.  The Second Circuit has also cautioned that

"[w]here the purpose behind the 'two dismissal' exception would not appear to be served by its

literal application, and where that application's effect would be to close the courthouse doors to

an otherwise proper litigant, a court should be most careful not to construe or apply the exception

too broadly."  See Poloron Prods., Inc. v. Lybrand Ross Bros. & Montgomery, 534 F.2d 1012,

1017 (2d Cir. 1976).

  Based on the record here, this Court concludes that every action that Plaintiff has

filed against Google has been for purposes of harassment.  Plaintiff had no good faith basis for

filing the California action given (1) the mandatory venue selection provision in the MSA

requiring that any claims regarding the MSA be brought in New York; and (2) the bankruptcy

petition against VoIP, which meant that only the bankruptcy trustee could bring claims on its

behalf.

  Plaintiff likewise had no good faith basis for filing the second action in New

York.  In the New York action, Plaintiff continued – at least initially – to name VoIP and

---

[4] To the extent Plaintiff argues that the California state court action cannot serve as a predicate
for determining that its second voluntary discontinuance was a decision on the merits, that
argument is incorrect.  C.P.L.R. 3217(c) provides that "a discontinuance by means of notice
operates as an adjudication on the merits if the party has once before discontinued by any method
an action based on or including the same cause of action in a court of any state or the United
States."  N.Y. C.P.L.R. 3217(c) (emphasis added).

VoiceOne as parties, despite the bankruptcy proceeding.  Moreover, as discussed below, most if not all of the claims made in the New York action – which were based on conduct that took place in 2006 and 2007 – were time-barred.

Plaintiff's conduct in this case can also be considered in determining whether Plaintiff acted in good faith in filing the New York state court action.  Here, when defense counsel moved to dismiss certain claims on the grounds that VoIP and VoiceOne were defunct and no longer existed (see Def. MTD Br. (Dkt. No. 31) at 8-9), Plaintiff's counsel submitted a declaration asserting that the reference to VoIP – in reality, a reference to VoiceOne – in the caption "was by mistake," and that counsel had instead intended that the "caption page assert[] only WABEC as the plaintiff." (Ball Decl. (Dkt. No. 36) ¶ 12)  When Defendant argued that there was no basis for Plaintiff's breach of contract and unjust enrichment claims, Plaintiff made no response.  (See Opp. Br. (Dkt. No. 35))  When Defendant asserted that Plaintiff's claims were barred by the applicable statutes of limitations, Plaintiff argued only that the bankruptcy proceeding against VoIP had tolled the statutes of limitations.  (See id.)  Plaintiff Wabec was not a party to those proceedings, however, and – in any event – the bankruptcy court action only stayed claims against the debtor VoIP.  All of these points were repeatedly brought to Plaintiff's counsel's attention by Google's counsel, with no discernible effect.  (Def. Sanctions Br. (Dkt. No. 25)).

In sum, the effect of applying the two-dismissal rule would not be "to close the courthouse doors to an otherwise proper litigant."  See Poloron Prods., Inc., 534 F.2d at 1017. N.Y. C.P.L.R. 3217(c) bars Plaintiff's claims, and those claims will be dismissed.

## II.   STATUTE OF LIMITATIONS

Defendant argues that Plaintiff's claims are time-barred under the applicable statutes of limitations, because each claim is based on conduct known to Plaintiff since 2006.

(Def. MTD Br. (Dkt. No. 31) at 7-8)  In response, Plaintiff argues only that its claims are timely

in light of Section 108(c)(2) of the Bankruptcy Code.  (Opp. Br. (Dkt. No. 35) at 3).

### A.       Applicable Legal Standards

"The statute of limitations is an affirmative defense on which the defendant bears

the burden of proof." Ellington Long Term Fund, Ltd. v. Goldman, Sachs & Co., No. 09 Civ.

9802 (RJS), 2010 WL 1838730, at *2 (S.D.N.Y. May 4, 2010).  "Where the dates in a complaint

show that an action is barred by a statute of limitations, a defendant may raise the affirmative

defense in a pre-answer motion to dismiss." Ghartey v. St. John's Queens Hosp., 869 F.2d 160,

162 (2d Cir. 1989); see New York v. W. Side Corp., 790 F. Supp. 2d 13, 28 (E.D.N.Y. 2011)

("[I]t is well-established that a statute of limitations defense may only be resolved on a pre-

answer motion to dismiss where the complaint alleges specific information to permit such a

finding.").  "Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to

state a claim upon which relief can be granted rather than a Rule 12(b)(1) motion to dismiss for

lack of jurisdiction over the subject matter." Ghartey, 869 F.2d at 162.  Moreover, where a

plaintiff's "claims are time-barred on the face of its own complaint, [plaintiff] has the burden of

pleading facts sufficient to establish that the statutes of limitations should be tolled.  OBG

Technical Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp., 503 F. Supp. 2d 490,

504 (D. Conn. 2007).

### B.       Copyright Infringement Claim

#### 1.       Applicable Law

"Civil actions under the Copyright Act are subject to a three-year statute of

limitations," Merchant v. Levy, 92 F.3d 51, 56 (2d Cir. 1996), and therefore "must be

commenced within three years of the date on which the cause of action accrued." Auscape Int'l

v. Nat'l Geographic Soc., 409 F. Supp. 2d 235, 241 (S.D.N.Y. 2004); see 17 U.S.C. § 507(b)

("No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."). "[A] claim for copyright infringement accrues on the date of the infringement." Auscape Int'l, 409 F. Supp. 2d at 247; see Med. Educ. Dev. Servs., Inc. v. Reed Elsevier Grp., PLC, No. 05 Civ. 8665 (GEL), 2008 WL 4449412, at *10 (S.D.N.Y. Sept. 30, 2008) ("[P]laintiff's cause of action accrued on the date of infringement, not on the [date] that it may have discovered such infringement."); see also Urbont v. Sony Music Entm't, 863 F. Supp. 2d 279, 282 (S.D.N.Y. 2012) ("Since Auscape, a majority of district courts in the Southern District of New York have followed Judge Kaplan's lead and applied the injury rule to infringement claims."). Moreover, "'[r]ecovery is allowed only for those acts occurring within three years of suit.'" Kregos v. Associated Press, 3 F.3d 656, 662 (2d Cir. 1993) (quoting Stone v. Williams, 970 F.2d 1043, 1049 (2d Cir. 1992)) (alteration in original); see id. (noting "the disfavor that the continuing-infringement doctrine has received in the copyright-infringement context" and holding that "[t]he continuing-infringement doctrine . . . is both inapplicable on these facts and unavailable in this circuit").

## 2.   **Analysis**

Here, Plaintiff alleges that VoiceOne provided Google with proprietary, patented, and confidential technology, including the Click to Call technology, pursuant to the MSA. (Cmplt. (Dkt. No. 1) ¶ 19) According to Plaintiff, the Click to Call technology includes software programs and algorithms for which Wabec holds copyrights. (Id. ¶ 14) Plaintiff further alleges that:

> on August 28, 2006, Google and eBay announced plans to launch an advertising feature that would allow users to initiate a telephone call from either company's website using Skype or Google Talk (id. ¶ 21);
>
> in January 2007, Google provided notice that it was terminating the MSA based on an alleged unauthorized disclosure that identified Google as a VoiceOne customer (id. ¶ 22);

15

Google's stated reason for terminating the MSA was pretextual; its actual reason was to exploit the confidential information provided by VoiceOne (id.);

"shortly after its termination of the Agreement," Google misappropriated, exploited, disclosed and otherwise used confidential information in connection with the joint venture Google entered into with eBay and Skype, which violated the MSA's confidentiality provisions (id. ¶ 23);

Google continues to exploit Plaintiff's misappropriated technology, trade secrets, and copyrighted computer software programs (id. ¶ 24); and

Google's implementation and use of the Click to Call technology was the result of its misappropriation of Plaintiff's trade secrets and infringement of their copyrights.  (Id. ¶ 3)

A statute of limitations defense is apparent based on these allegations.  See Ghartey, 869 F.2d at 162.  Plaintiff alleges that Google terminated the MSA in January 2007 and began exploiting Plaintiff's technology "shortly after its termination of the Agreement."  (Cmplt. (Dkt. No. 1) ¶¶ 22-23)  Because Plaintiff filed this action on December 28, 2012, however, it can only recover for acts of infringement that occurred after December 28, 2009, under the Copyright Act's three-year statute of limitations.  See Merchant, 92 F.3d at 56; Kregos, 3 F.3d at 662.  The dates alleged in the Complaint indicate that any alleged acts of infringement occurred well before December 28, 2009.  Accordingly, Plaintiff's claim for copyright infringement is time-barred.[5]

## C.    State Law Claims

"It has long been established as a matter of federal law that state statutes of limitations govern the timeliness of state law claims[,]" and that "[s]tate law also determines the

---

[5]  To the extent Plaintiff seeks to recover for acts of infringement that took place after December 28, 2009, it has not pleaded sufficient facts to raise its claim for relief above the speculative level.  See Rahman v. Fisher, 607 F. Supp. 2d 580, 584 (S.D.N.Y. 2009).  Plaintiff alleges that "Google continues to exploit Plaintiffs' misappropriated technology, trade secrets, and copyrighted computer software programs."  (Cmplt. (Dkt. No. 1) ¶ 24)  This naked legal conclusion is not sufficient to defeat a motion to dismiss.  Iqbal, 556 U.S. at 678 (holding that a complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'") (quoting Twombly, 550 U.S. at 557).  Plaintiff has provided no facts supporting its claim that Google continued to infringe its copyrights after December 28, 2009.

16

related questions of what events serve to commence an action and to toll the statute of limitations. . . ." Personis v. Oiler, 889 F.2d 424, 426 (2d Cir. 1989) (citations omitted). Moreover, "[a] federal court considering state law claims under supplemental jurisdiction applies the choice of law principles of the state in which the court sits."[6] Synergetics USA, Inc. v. Alcon Labs., Inc., No. 08 Civ. 3669 (DLC), 2009 WL 2016872, at *2 (S.D.N.Y. July 9, 2009) (citing N. Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 43 (2d Cir. 1999)). "Because the statute of limitations is an affirmative defense, the defendant bears the burden of establishing by prima facie proof that the limitations period has expired since the plaintiff's claims accrued." Overall v. Estate of Klotz, 52 F.3d 398, 403 (2d Cir. 1995); see Romano v. Romano, 19 N.Y.2d 444, 447 (1967) ("If the time stated is merely a Statute of Limitations, the plaintiff has no obligation in respect of the three-year period which must be established affirmatively by a defendant who contests the action."). "However, the plaintiff bears the burden of proving that a particular statute of limitation has been tolled." Cuccolo v. Lipsky, Goodkin & Co., 826 F. Supp. 763, 767 n.3 (S.D.N.Y. 1993) (citing Doyon v. Bascom, 38 A.D.2d 645, 645 (3rd Dep't 1971)).

In determining the appropriate limitations period, "New York applies a 'borrowing statute,' N.Y. C.P.L.R. Section 202, for actions filed by a nonresident."[7] Synergetics, 2009 WL 2016872, at *2. New York's borrowing statute provides:

---

[6] Although the MSA contains a choice-of-law provision providing that New York law governs, (see Page Decl. (Dkt. No. 32), Ex. M1 ¶7.11), that provision does not determine which state's statute of limitations applies. See Portfolio Recovery Associates, LLC v. King, 14 N.Y.3d 410, 415-16 (2010) ("The Appellate Division properly concluded that the Delaware choice of law clause did not require the application of the Delaware three-year statute of limitations to bar Portfolio's claims. Choice of law provisions typically apply to only substantive issues, and statutes of limitations are considered 'procedural' because they are deemed 'as pertaining to the remedy rather than the right.'" (quoting Tanges v. Heidelberg N. Am., Inc., 93 N.Y.2d 48, 53 (1999))).

[7] Both Wabec and VoiceOne are Delaware limited liability companies with a principal place of business in Los Angeles, California. (Id. ¶¶ 4-5)

> An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

N.Y. C.P.L.R. 202. Accordingly, "when a nonresident plaintiff sues upon a cause of action that arose outside of New York, the court must apply the shorter limitations period, including all relevant tolling provisions, of either: (1) New York; or (2) the state where the cause of action accrued." Stuart v. Am. Cyanamid Co., 158 F.3d 622, 627 (2d Cir. 1998); see Morson v. Kreindler & Kreindler, LLP, 814 F. Supp. 2d 220, 228-29 (E.D.N.Y. 2011) ("[U]nder New York's borrowing statute, the Court must consider not just the accrual state's limitations period, but also that state's tolling provisions.") (citation omitted)); see also Portfolio Recovery Assocs., LLC v. King, 14 N.Y.3d 410, 416 (N.Y. 2010) ("[I]n determining whether Portfolio's action would be barred in Delaware, this Court must 'borrow' Delaware's tolling statute to determine whether under Delaware law Portfolio would have had the benefit of additional time to bring the action.").

For purposes of determining where a cause of action accrues under New York's borrowing statute, the New York Court of Appeals has "consistently employed the traditional definition of accrual – a cause of action accrues at the time and in the place of the injury." Global Fin. Corp. v. Triarc Corp., 93 N.Y.2d 525, 529 (N.Y. 1999). "When an alleged injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss." Id. Thus, "[i]f the claimed injury is an economic one, the cause of action typically accrues 'where the plaintiff resides and sustains the economic impact of the loss.'" Portfolio Recovery Assocs., 14 N.Y.3d at 416 (quoting Triarc, 93 N.Y.2d at 529). "Under the New York borrowing statute, a business's principal place of business constitutes the sole residency of that business entity." Woori Bank v. Merrill Lynch, 923 F. Supp. 2d 491, 495

(S.D.N.Y.), aff'd, 542 F. App'x 81 (2d Cir. 2013). Accordingly, "for purposes of CPLR 202, New York's borrowing statute, the residence of an LP or LLC is determined not by the citizenship of its members, but rather by the location of its principal office." BPP Ill., LLC v. Royal Bank of Scot. Grp., PLC, No. 13 Civ. 0638 (JMF), 2013 WL 6003701, at *5 (S.D.N.Y. Nov. 13, 2013).

Here, Wabec and VoiceOne reside in California for purposes of New York's borrowing statute, because both are LLCs that maintain a principal place of business in Los Angeles, California. See id. at *5-6. Moreover, given that Plaintiff's claims are based on economic injury, its causes of action accrued in its state of residence. See Portfolio Recovery Assocs., 14 N.Y.3d at 416. Accordingly, because Plaintiff is a non-resident whose claims accrued in California, this Court will apply the shorter limitations period of New York or California pursuant to N.Y. C.P.L.R. 202. See Stuart, 158 F.3d at 627.

### 1.    Misappropriation of Trade Secrets

"Under New York law, a misappropriation of trade secret claim must be brought within three years of its accrual." Synergetics USA, Inc. v. Alcon Labs., Inc., No. 08 Civ. 3669 (DLC), 2009 WL 2016872, at *2 (S.D.N.Y. July 9, 2009) (citing N.Y. C.P.L.R. 214); see N.Y. C.P.L.R. 214 ("The following actions must be commenced within three years: . . . an action to recover damages for an injury to property . . ."). "'Misappropriation first accrues either when defendant discloses the trade secret or when he first makes use of plaintiff's ideas.'" Galet v. Carolace Embroidery Prods. Co., Inc., No. 91 Civ. 7991 (SS), 1994 WL 542275, at *4 (S.D.N.Y. Oct. 5, 1994), aff'd, 122 F.3d 1056 (2d Cir. 1995) (quoting Lemelson v. Carolina Enters., Inc., 541 F. Supp. 645, 659 (S.D.N.Y. 1982)). "The date of accrual may be extended under the continuing tort doctrine where the 'defendant has kept a secret confidential but continued to use it for commercial advantage.'" Synergetics, 2009 WL 2016872, at *2. "Where, however, the

defendant 'discloses the secrets revealed to him, there can be no continuing tort of unlawful use.'" Id. (quoting Lemelson, 541 F. Supp. at 659). "Thus, where the plaintiff had knowledge of the defendant's misappropriation and use of its trade secret, the continuing tort doctrine does not apply." Id. (citing M & T Chems., Inc. v. Int'l Bus. Machines Corp., 403 F. Supp. 1145, 1150 (S.D.N.Y. 1975), aff'd, 542 F.2d 1165 (2d Cir. 1976)).

Under California law, "[a]n action for misappropriation must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered.  For the purposes of this section, a continuing misappropriation constitutes a single claim."  Cal. Civ. Code § 3426.6.  Thus, "a plaintiff's claim for misappropriation of a trade secret against a defendant arises only once, when the trade secret is initially misappropriated, and each subsequent use or disclosure of the secret augments the initial claim rather than arises as a separate claim."  Cadence Design Sys., Inc. v. Avant! Corp., 29 Cal. 4th 215, 227 (Cal. 2002).

Here, Plaintiff alleges that Google's implementation and use of the Click to Call technology was the result of misappropriation of Plaintiff's trade secrets.  (Cmplt. (Dkt. No. 1) ¶ 3)  In particular, Plaintiff alleges that, "shortly after its termination of the Agreement," Google misappropriated, exploited, disclosed and otherwise used confidential information in connection with the joint venture Google entered into with eBay and Skype.  (Id. ¶¶ 23, 41)  Google terminated the agreement in January 2007.  (Id. ¶ 22)  Thus, under New York and California law, Plaintiff's claim accrued in January 2007, when Google first misappropriated and disclosed Plaintiff's trade secrets.  See Galet, 1994 WL 542275, at *4; Cadence, 29 Cal. 4th at 227. However, Plaintiff did not file this action until December 28, 2012.  (Cmplt. (Dkt. No. 1))  Thus,

pursuant to either state's three-year statute of limitations, Plaintiff's claim for misappropriation of trade secrets is time-barred.  See N.Y. C.P.L.R. 214; Cal. Civ. Code § 3426.6.

### 2.     Breach of Contract

Under New York law, "[b]reach of contract actions are subject generally to a six-year statute of limitations." Chase Scientific Research, Inc. v. NIA Grp., Inc., 96 N.Y.2d 20, 25 (N.Y. 2001); see N.Y. C.P.L.R. 213 ("The following actions must be commenced within six years: . . . an action upon a contractual obligation or liability, express or implied . . ."). Additionally, "[i]n New York, a breach of contract cause of action accrues at the time of the breach." Ely-Cruikshank Co., Inc. v. Bank of Montreal, 81 N.Y.2d 399, 402 (N.Y. 1993).

Under California law, "[t]he ordinary statute of limitations for breach of a written contract is four years." Vu v. Prudential Prop. & Cas. Ins. Co., 26 Cal. 4th 1142, 1148 (Cal. 2001); see Cal. Civ. Proc. Code §§ 335, 337.  Moreover, in California, "[a] contract cause of action does not accrue until the contract has been breached."  Spear v. Cal. State Auto. Ass'n, 2 Cal. 4th 1035, 1042 (Cal. 1992).

Here, Plaintiff alleges that Google terminated the MSA in January 2007 and, "shortly after its termination," used the confidential information VoiceOne had provided, "in direct breach of the Agreement's Confidentiality Provision." (Cmplt. (Dkt. No. 1) ¶¶ 22-23) Under the law of both New York and California, Plaintiff's cause of action for breach of contract accrued at the time of the alleged breach – namely, "shortly after" January 2007. See Ely-Cruikshank, 81 N.Y.2d at 402; Spear, 2 Cal. 4th at 1042.  Under New York law, Plaintiff was required to file its action by January 2013.  See N.Y. C.P.L.R. 213.  Under California law, however, Plaintiff was required to file its action by January 2011.  See Cal. Civ. Proc. Code §§ 335, 337.  Because Plaintiff did not file this action until December 28, 2012, its breach of

contract claim is barred by California's four-year statute of limitations, as applied through New

York's borrowing statute.  See N.Y. C.P.L.R. 202.

### 3.  Unjust Enrichment

"Under New York law, there is no identified statute of limitations period within

which to bring a claim for unjust enrichment."  Maya NY, LLC v. Hagler, 106 A.D.3d 583, 585

(1st Dep't 2013).  However, "where . . . the unjust enrichment and breach of contract claims are

based upon the same facts and pleaded in the alternative, a six-year statute of limitations

applies."  Id.; see Golden Pac. Bancorp v. Fed. Deposit Ins. Corp., 273 F.3d 509, 518 (2d Cir.

2001) ("The statute of limitations in New York for claims of unjust enrichment . . . is generally

six years."); N.Y. C.P.L.R. 213 ("The following actions must be commenced within six years:

. . . an action for which no limitation is specifically prescribed by law.").  "A cause of action for

unjust enrichment accrues 'upon the occurrence of the wrongful act giving rise to a duty of

restitution.'"  Elliott v. Qwest Commc'ns Corp., 25 A.D.3d 897, 898 (3d Dep't 2006) (citation

omitted).

"[A]lthough California courts are split on whether unjust enrichment is a

cognizable cause of action, . . . 'courts in [the Northern District of California] have held that

California law permits unjust enrichment claims, in which "restitution may be awarded either (1)

in lieu of breach of contract damages, where an asserted contract is found to be unenforceable or

ineffective, or (2) where the defendant obtained a benefit from the plaintiff by fraud, duress,

conversion, or similar conduct, but the plaintiff has chosen not to sue in tort.'"'  Brown v.

Brown, No. CV 13-03318 SI, 2013 WL 5947032, at *7 (N.D. Cal. Nov. 5, 2013) (quoting

Ellsworth v. U.S. Bank, N.A., 908 F. Supp. 2d 1063, 1087 (N.D. Cal. 2012) (quoting Oracle

Corp. v. SAP AG, No. C 07-1658 PJH, 2008 WL 5234260, at *8 (N.D. Cal. Dec. 15, 2008))).

Where a party alleges a quasi contract claim such as unjust enrichment alongside a breach of contract claim, California courts have held that a two-year statute of limitations applies. See Guards Polo Club Holdings Ltd. v. Reid, No. 11-1817 SC, 2011 WL 3473378, at *8 (N.D. Cal. Aug. 9, 2011) ("[A]s an action for liability not founded upon a written contract, a quantum meruit claim is typically subject to a two-year statute of limitations . . ." (citing Cal. Civ. Proc. Code § 339(1)).  Where a party alleges unjust enrichment based on fraud or mistake, California courts have held that a three-year statute of limitations applies. See Fed. Deposit Ins. Corp. v. Dintino, 167 Cal. App. 4th 333, 348 (Cal. 2008) ("We conclude the section 338, subdivision (d), three-year statute of limitations applies to an unjust enrichment cause of action based on mistake.") (emphasis omitted); see also Cal. Civ. Proc. Code § 338(d).

Neither side has addressed which statute of limitations applies.  Because Plaintiff makes no allegation of fraud or mistake in support of its unjust enrichment claim, this Court will apply the two-year statute of limitations found in Cal. Civ. Proc. Code § 339(1).  Such a claim "accrues at the time of the breach."  Haynes v. Lemann, 53 F.3d 338 (9th Cir. 1995) (table opinion); see Silver v. Goldman Sachs Grp., Inc., No. CV 10-4961 RSWL AJWX, 2011 WL 1979241, at *4 (C.D. Cal. May 19, 2011) (same).

Here, Plaintiff alleges that "Google has received money belonging to Plaintiffs through the misappropriation of trade secrets." (Cmplt. (Dkt. No. 1) ¶ 49)  As discussed above, Plaintiff further alleges that the breach of contract and misappropriation occurred in January 2007.  Under New York law, Plaintiff's cause of action accrued in January 2007, when the wrongful act giving rise to the unjust enrichment claim occurred.  See Elliott, 25 A.D.3d at 898. Thus, under New York law, Plaintiff was required to file its action for unjust enrichment before January 2013.  See N.Y. C.P.L.R. 213.  Under California law, Plaintiff's cause of action accrued

in January 2007, when Google allegedly breached the MSA.  See Silver, 2011 WL 1979241, at

*4.  Accordingly, under California law, Plaintiff was required to file its action for unjust

enrichment by January 2009.  See Cal. Civ. Proc. Code § 338(d).  Given that Plaintiff did not file

the instant action until December 28, 2012, its claim for unjust enrichment is barred by

California's two-year statute of limitations, as applied through New York's borrowing statute.

See N.Y. C.P.L.R. 202.

> ### D.　　Tolling Under Section 108(c) of the Bankruptcy Code

Plaintiff's sole response to Defendant's statute of limitations arguments is that its

claims are timely in light of Section 108(c)(2) of the Bankruptcy Code.  (Opp. Br. (Dkt. No. 35)

at 3-4)

Section 108(c) provides:

> Except as provided in section 524 of this title, if applicable nonbankruptcy law, an
> order entered in a nonbankruptcy proceeding, or an agreement fixes a period for
> commencing or continuing a civil action in a court other than a bankruptcy court
> on a claim against the debtor, or against an individual with respect to which such
> individual is protected under section 1201 or 1301 of this title, and such period
> has not expired before the date of the filing of the petition, then such period does
> not expire until the later of –
>
> > (1) the end of such period, including any suspension of such period occurring
> > on or after the commencement of the case; or
> >
> > (2) 30 days after notice of the termination or expiration of the stay under
> > section 362, 922, 1201, or 1301 of this title, as the case may be, with
> > respect to such claim.

11 U.S.C. § 108(c).  Plaintiff sets forth no coherent argument as to why the statutes of limitations

governing its claims against Google were tolled under this provision.  Section 108(c) addresses

"claim[s] against the debtor."  For purposes of the Florida bankruptcy proceeding, VoIP was the

"debtor."  The instant action involves claims by Wabec against Google.  Neither Wabec nor

Google was the "debtor" in the Florida bankruptcy proceeding.  Because Wabec has not

explained how Section 108(c) tolled the statute of limitations as to its claims against Google, and because those claims are time-barred, Defendant's motion to dismiss will be granted.

## III.   SANCTIONS

Defendant has moved for the imposition of sanctions pursuant to Fed. R. Civ. P. 11, including an award of attorney's fees and costs.  (See Def. Br. (Dkt. No. 25))

"On motion or its own initiative, [a] court may, after notice and an opportunity to respond, impose sanctions for violations of Rule 11(b)."  Siegel v. Pro-Ex Sec., No. 02 Civ. 610 (DLC), 2002 WL 1203851, *2 (S.D.N.Y. June 3, 2002).  Rule 11(b) provides in pertinent part that, by presenting a complaint to the court, the attorney signing or filing the complaint

> [is] certif[ying] that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[ ] . . .

Fed. R. Civ. P. 11(b).

"Attorneys have a duty to the court not to make 'legal contentions . . . [un]warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law . . .'"  Whiting v. Lacara, 187 F.3d 317, 322-23 (2d Cir. 1999) (quoting Fed. R. Civ. P. 11(b)(2)).  "This duty is violated 'when it is clear under existing precedents that [the argument has] no chance of success and [there exists] no reasonable argument to extend, modify or reverse the law as it stands.'"  Siegel, 2002 WL 1203851, *2 (quoting Gurary v. Winehouse, 235 F.3d 792, 798 (2d Cir. 2000) (citation omitted)) (alterations in original).  "In

determining whether a signer has violated Rule 11, a district court applies an objective standard of reasonableness." Derechin v. State Univ. of N.Y., 963 F.2d 513, 516 (2d Cir. 1992).

       "Rule 11(c) provides . . . that '[i]f . . . the court determines that subdivision (b) has been violated, the court may . . . impose an appropriate sanction. . . . '" Perez v. Posse Comitatus, 373 F.3d 321, 325 (2d Cir. 2004) (quoting Fed. R. Civ. P. 11(c)) (emphasis omitted). "The decision whether to impose a sanction for a Rule 11(b) violation is thus committed to the district court's discretion." Id. "The Second Circuit has cautioned that Rule 11 sanctions should be 'made with restraint.'" Lorber v. Winston, No. 12-CV-3571 (ADS) (ETB), 2014 WL 292440, at *2 (E.D.N.Y. Jan. 10, 2014) (quoting Schlaifer Nance & Co., Inc. v. Estate of Warhol, 194 F.3d 323, 334 (2d Cir. 1999)). "[I]n imposing rule 11 sanctions, the court is to . . . resolve all doubts in favor of the signer." Oliveri v. Thompson, 803 F.2d 1265, 1275 (2d Cir. 1986).

       Based on the conduct discussed in Part I(B) of this order, this Court concludes that an award of sanctions is appropriate. Defendant's motion for sanctions will therefore be granted.

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is granted, and Defendant's motion for sanctions is granted.  The Clerk of the Court is directed to terminate the motions (Dkt. Nos. 24, 30).

The following schedule will apply to further briefing on Defendant's motion for sanctions:

1.   Defendant's brief is due on **April 14, 2014**.

2.   Plaintiff's opposition is due on **April 21, 2014**.

3.   Defendant's reply, if any, is due on **April 28, 2014**.

These briefs should address both the amount of sanctions and the party on whom sanctions should be imposed.

Dated: New York, New York
       March 29, 2014

SO ORDERED.

Paul G. Gardephe
United States District Judge